85 F.3d 628
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eric ADAMS, by his next friend, Anne ADAMS, Plaintiff-Appellant,
v.
TOWNSHIP OF REDFORD, et al., Defendants,
and
South Redford School District; Mary Brun, individually and
in her official capacity as principal of Thomas Jefferson
Elementary School; Jan W. Jacobs, individually and in his
official capacity as superintendent of South Redford School
District, Defendants-Appellees.
 No. 95-1279.
 United States Court of Appeals, Sixth Circuit.
 May 10, 1996.
 
 Before: CONTIE, SUHRHEINRICH and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Anne Adams, on behalf of her son, Eric Adams ("Eric"), appeals the district court's grant of summary judgment to defendants in this action alleging violation of Eric's First and Fourteenth Amendment rights by their refusal to allow and their policy against wearing of his White Sox jacket because of its alleged association with gang activity. We find the facts before us insufficiently developed to rule on the parties' arguments, and therefore VACATE the district court's order and REMAND for further factual development.
 
 I.
 
 2
 This case involves the promulgation of two disciplinary codes, one oral and one written, by school officials in the South Redford School District ("District"). Eric Adams was an eleven-year-old fifth grader at Jefferson Elementary School in the fall of 1993. That fall, District officials grew concerned about gang activity. Assaults occurred on students inadvertently wearing gang colors. Police, nearby schools, and other communities reported increased frequency of gang graffiti, clothing, hand signals and other gang activity and disruptions.
 
 
 3
 Defendant school officials made an effort to better understand gang culture and activity and explored potential methods of combatting its influence. They learned that a gang's "colors" are an integral part of its identity. They also learned that a local gang, known as the "Square Boys," was identified by the colors black and white, especially in the form of the Chicago White Sox emblem. On October 7, 1993, defendant Mary Brun, principal of Jefferson School, attended a panel discussion presented by a local community group at which area school and law enforcement officials spoke on gang activity in the area.
 
 
 4
 On October 11, 1993, Brun saw Eric and another youth playing in White Sox jerseys, and asked them not to wear White Sox clothing to school again. Brun repeated her request to not wear White Sox clothing to both of the school's fifth grade classes. This was the orally promulgated rule under which Eric was eventually disciplined.
 
 
 5
 On October 12, 1993, Eric wore a White Sox jacket to school, and allegedly disrupted another class by waving it to students in the classroom while standing in the hall. Brun observed Eric's actions and confiscated the jacket. Eric received one day of in school suspension as a result of the incident.
 
 
 6
 On October 18, 1993, defendant Jan Jacobs, District superintendent, announced additions to the District dress code in a letter to parents which banned:
 
 
 7
 1. The wearing of clothing or altering one's appearance, to indicate gang membership.
 
 
 8
 2. The wearing of beads, earrings, or jewelry that denotes gang colors or symbols.
 
 
 9
 3. The use of hand signs that communicate gang activity.
 
 
 10
 4. Any other symbols, items, or activities that the Superintendent of Schools may deem disruptive.
 
 
 11
 Also enclosed and cross-referenced in the October 18, 1993 letter was a "gang awareness" pamphlet. The pamphlet pointed out that "articles of clothing that are conspicuously black and white ... belts, ball caps, jackets, (particularly White Sox clothing) and beads" were ways to identify gang members. The letter and enclosed pamphlet constitute the written rule prohibiting Eric from wearing his jacket. He was never disciplined pursuant to this code, but claims that the presence of the rule violates his First Amendment rights.
 
 
 12
 Plaintiff brought suit against the District, Brun, Jacobs, and the Township of South Redford, alleging denial of Eric's First Amendment right to free speech, denial of equal protection, and invasion of privacy. Plaintiff sought declaratory relief holding the written code unconstitutional, injunctive relief prohibiting defendants from enforcing the code, and monetary damages.
 
 
 13
 The district court held that school officials acted permissibly in refusing to allow Eric to wear his jacket because they had a reasonable forecast of substantial disruption. See Tinker v. Des Moines Indep. School Dist., 393 U.S. 503 (1969). The district court also held that the policy set forth in the October 18, 1993 letter was not void for vagueness because, together with the enclosed pamphlet, it was sufficiently clear to give notice to students of what conduct would subject them to discipline. This appeal followed, challenging only the order granting summary judgment to the District, Brun, and Jacobs.
 
 II.
 
 14
 Plaintiff contends that the oral code's prohibition on Eric's speech was not justified by a reasonable "forecast of substantial disruption or material interference with school activities...." Tinker, 393 U.S. at 513-14. Defendants argue that the oral code was justified by events which occurred prior to Brun's promulgation of the code on October 11, 1993. Although the record establishes that certain events occurred, it is not clear what events prompted Brun to enact the code. For example, defendants assert that Brun had encountered gang graffiti on a school wall. In her deposition, however, Brun stated that she was unsure whether this event occurred before or after she promulgated the oral code. Brun also stated that she had no idea whether Jefferson students were responsible for the graffiti.
 
 
 15
 Defendants also assert that Brun had notice of gang activity from other school officials. For example, Lorraine Yadach, principal of another middle school in the District, averred that she observed gang graffiti and hand signals as early as March 1993, and that White Sox apparel was a common identifier of gang members. It is not clear, however, that Brun knew of or relied upon Yadach's observations in enacting the oral code. It is also unclear what information Brun received at the October 7 panel discussion about specific gang activity threatening Jefferson or the surrounding area. Without a clearer picture of the facts of which Brun was aware when she promulgated the written code, we are unable at this juncture to either affirm or reverse the district court's order granting summary judgment.
 
 
 16
 Plaintiff also challenges the written code as vague and overbroad. Although the written code was never enforced against Eric, plaintiff apparently claims standing because Eric's First Amendment rights are implicated. See Greater Cincinnati Coalition for the Homeless v. City of Cincinnati, 56 F.3d 710, 715-16 (6th Cir.1995) (litigant need not actually undergo prosecution to challenge allegedly unconstitutional enactment when First Amendment rights are involved). The district court did not address plaintiff's standing to challenge the written code. The record suggests, however, that neither Eric nor his mother have any real objection to the substance of the written code, only to the fact that its purpose was not adequately explained to them. This raises the question of whether Eric alleged a "real and immediate" threat of injury sufficient to warrant standing. Id. On remand, the district court should ensure plaintiff has standing to challenge the written code. United States v. Van, 931 F.2d 384, 387 (6th Cir.1991) (appellate court may raise standing issue on its own motion).
 
 III.
 
 17
 For the foregoing reasons, the order of the district court is VACATED and REMANDED for proceedings not inconsistent with this opinion.